JS 44 (Rev. 10/20)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
JOHNATHAN STEVENS

## DEFENDANTS
Scott County, Tennessee, Sheriff Brian Keeton, Detective Aimee Wright, Amy Lay, Tony Jones, et als

**(b)** County of Residence of First Listed Plaintiff    Scott
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant    Scott
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Jade A. Peters, JP LAW LLC, 19391 Alberta St., Oneida, TN 37841 (P) 888-448-5233

Attorneys *(If Known)*
John Beaty, 447 Baker Hwy #3, Huntsville, TN 37756, (P) 423-663-4301

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

| | |
|---|---|
| ☐ 1 U.S. Government Plaintiff | ☒ 3 Federal Question *(U.S. Government Not a Party)* |
| ☐ 2 U.S. Government Defendant | ☐ 4 Diversity *(Indicate Citizenship of Parties in Item III)* |

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - | ☐ 690 Other | ☐ 423 Withdrawal | ☐ 376 Qui Tam (31 USC |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Product Liability | | 28 USC 157 | 3729(a)) |
| ☐ 140 Negotiable Instrument | Liability | ☐ 367 Health Care/ | | | ☐ 400 State Reapportionment |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Pharmaceutical | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| & Enforcement of Judgment | Slander | Personal Injury | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted | Liability | ☐ 368 Asbestos Personal | | ☐ 835 Patent - Abbreviated | ☐ 460 Deportation |
| Student Loans | ☐ 340 Marine | Injury Product | | New Drug Application | ☐ 470 Racketeer Influenced and |
| (Excludes Veterans) | ☐ 345 Marine Product | Liability | | ☐ 840 Trademark | Corrupt Organizations |
| ☐ 153 Recovery of Overpayment | Liability | **PERSONAL PROPERTY** | **LABOR** | ☐ 880 Defend Trade Secrets | ☐ 480 Consumer Credit |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards | Act of 2016 | (15 USC 1681 or 1692) |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | ☐ 371 Truth in Lending | Act | | ☐ 485 Telephone Consumer |
| ☐ 190 Other Contract | Product Liability | ☐ 380 Other Personal | ☐ 720 Labor/Management | **SOCIAL SECURITY** | Protection Act |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Property Damage | Relations | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 196 Franchise | Injury | ☐ 385 Property Damage | ☐ 740 Railway Labor Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ |
| | ☐ 362 Personal Injury - | Product Liability | ☐ 751 Family and Medical | ☐ 863 DIWC/DIWW (405(g)) | Exchange |
| | Medical Malpractice | | Leave Act | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☒ 440 Other Civil Rights | **Habeas Corpus:** | ☐ 791 Employee Retirement | | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | Income Security Act | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate | | ☐ 870 Taxes (U.S. Plaintiff | Act |
| ☐ 240 Torts to Land | ☐ 443 Housing/ | Sentence | | or Defendant) | ☐ 896 Arbitration |
| ☐ 245 Tort Product Liability | Accommodations | ☐ 530 General | | ☐ 871 IRS—Third Party | ☐ 899 Administrative Procedure |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 535 Death Penalty | **IMMIGRATION** | 26 USC 7609 | Act/Review or Appeal of |
| | Employment | **Other:** | ☐ 462 Naturalization Application | | Agency Decision |
| | ☐ 446 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration | | ☐ 950 Constitutionality of |
| | Other | ☐ 550 Civil Rights | Actions | | State Statutes |
| | ☐ 448 Education | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - | | | |
| | | Conditions of | | | |
| | | Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

| | | | | | | |
|---|---|---|---|---|---|---|
| ☒ 1 Original Proceeding | ☐ 2 Removed from State Court | ☐ 3 Remanded from Appellate Court | ☐ 4 Reinstated or Reopened | ☐ 5 Transferred from Another District *(specify)* | ☐ 6 Multidistrict Litigation - Transfer | ☐ 8 Multidistrict Litigation - Direct File |

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
42 U.S. §1983, 28 U.S.C. Sections 1331 and 1343 (1), (3) and (4)

Brief description of cause:
False Arrest, Civil Rights Violations and associated state law claims

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

**DEMAND $**
2,500,000.00

CHECK YES only if demanded in complaint:
**JURY DEMAND:** ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*    JUDGE _____    DOCKET NUMBER _____

DATE _____

SIGNATURE OF ATTORNEY OF RECORD _____

**FOR OFFICE USE ONLY**

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

### Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.(a)**   **Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

 **(b)**   **County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

 **(c)**   **Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.**   **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.
United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; **NOTE: federal question actions take precedence over diversity cases.**)

**III.**   **Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.**   **Nature of Suit.** Place an "X" in the appropriate box. If there are multiple nature of suit codes associated with the case, pick the nature of suit code that is most applicable. Click here for: Nature of Suit Code Descriptions.

**V.**   **Origin.** Place an "X" in one of the seven boxes.
Original Proceedings. (1) Cases which originate in the United States district courts.
Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441.
Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.
Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.
Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation – Transfer. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.
Multidistrict Litigation – Direct File. (8) Check this box when a multidistrict case is filed in the same district as the Master MDL docket.
**PLEASE NOTE THAT THERE IS NOT AN ORIGIN CODE 7.** Origin Code 7 was used for historical records and is no longer relevant due to changes in statue.

**VI.**   **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** Example: U.S. Civil Statute: 47 USC 553 Brief Description: Unauthorized reception of cable service.

**VII.**   **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand. In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.**   **Related Cases.** This section of the JS 44 is used to reference related pending cases, if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TENNESSEE
## AT KNOXVILLE

| | | |
|---|---|---|
| **JOHNATHAN STEVENS,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **No. _____** |
| | § | **Jury of Twelve Demanded** |
| **SCOTT COUNTY, TENNESSEE,** | § | |
| **BRIAN KEETON, AIMEE WRIGHT,** | § | |
| **AMY LAY, TONY JONES, Unknown John** | § | |
| **and Jane Doe jail officers, & Jane Doe nurse(s)** | § | |
| | § | |
| **and** | § | |
| | § | |
| **ADVANCED CORRECTIONAL** | § | |
| **HEALTHCARE ("ACH"),** | § | |
| | § | |
| **Defendants.** | § | |

## COMPLAINT

Comes the Plaintiff, for cause of action against the Defendants herein would show as follows:

### I.    PARTIES

1. Plaintiff Johnathan Stevens is a resident of Scott County, Tennessee. He is a bright young man who graduated early despite the loss of his mother at a young age. At all times relevant to this Complaint he was employed and a caregiver for his disabled Father.

2. Defendant Scott County, Tennessee is a governmental entity created and existing in the State of Tennessee and can be served through its County Attorney, John Beaty, 447 Howard H. Baker Hwy., #3, Huntsville, TN 37756.

3. Defendant Advanced Correctional Healthcare is an Illinois Corporation licensed to do business in Tennessee and can be served through its registered agent for service of

process, C T Corporation System, 800 S. Gay St., Ste. 2021, Knoxville, TN 37929-9710 with its principal place of business being at 3922 Barring Trace, Peoria, IL 61615-2500.

4. Defendant Brian Keeton was serving as Sheriff of Scott County, Tennessee at all times relevant to this Complaint. He is sued in her personal and official capacity.

5. Defendant Aimee Wright was serving as a Detective employed by Scott County and appointed to the position by Sheriff Brian Keeton at all times relevant to this Complaint. She is sued in her personal and official capacity.

6. Defendant Amy Lay was serving as Jail Administrator of Scott County, Tennessee at all times relevant to this Complaint. She is sued in her personal and official capacity.

7. Defendant Tony Jones was employed by Scott County, Tennessee as a deputy at all times relevant to this Complaint. He is being sued in his personal and professional capacity.

8. Unknown John and Jane Doe jail officer were employed by Scott County, Tennessee at all times relevant to this Complaint.

9. Unknown Jane Doe nurse(s) were employed by ACH and working at the Scott County Jail at all times relevant to this Complaint.

## II. STATEMENT OF JURISDICTION AND VENUE

10. Because this civil rights action arises under the United States Constitution, this Court has jurisdiction pursuant to Article III of the Constitution and under 28 U.S.C. Sections 1331 and 1343 (1), (3), and (4).

11. The relief sought is authorized by the United States Constitution and by 42 U.S.C. Section 1983.

12. This Court has supplemental jurisdiction over the state law claims under 28 U.S.C. Section 1367.

13. Venue is proper in this Court according to U.S.C. Section 1391 (b) because all or most incidents, events, and occurrences giving rise to this action occurred in the Eastern District of Tennessee.

## III.    STATEMENT OF FACTS

14. On or about March 6, 2025, a warrant for the arrest of Johnathan Stevens was issued upon the sworn statement of Detective Aimee Wright. (See: Exhibit 1).

15. The affidavit of complaint stated as follows:

> On 02/02/2025 Addyson White (VICTIM) was at Helenwood Baptist Church, while she was walking out of the church Jonathan (SIC) Stevens was trying to talk to her and Ms. White walked past him trying to ignore him. Mr. Stevens then aggressively grabbed her by the left arm to make Ms. White talk to him. By grabbing Ms. White, Mr. Stevens intentionally caused extremely offensive physical contact with her. Ms. White also stated she was scared that if she said anything about the incident that Mr. Stevens would retaliate.

16. None of the boxes necessitating an arrest were checked on the Officers return.

17. Although no reason was specified that would necessitate the command to arrest Johnathan Stevens, Mr. Stevens was arrested on March 6, 2025 by Deputy Tony Jones.

18. Deputy Jones told Mr. Stevens at the time, "I really don't believe you did this [the assault on Ms. White], but I have to arrest you."

19. Upon information and belief, the charges were held for a period of time by Detective Aimee Wright and only taken *after* a plea was entered in another unrelated case involving Mr. Stevens with the purpose of violating Mr. Steven's state probation.

20. Johnathan Stevens was detained on approximately four separate occasions by deputies of Scott County Sheriff's Department who apparently believed there was an active warrant for Mr. Stevens arrest prior to the arrest warrant being taken on March 6, 2025.

21. This delay was apparently for the sole purpose of causing greater harm to Johnathan Stevens and *not* to investigate the allegations by visiting the church or taking statements.

22. Detective Wright could have easily discovered that the church had cameras if she had simply gone to the church during the time after the allegations were made and prior to swearing out the warrant for arrest.

23. Plaintiff Johnathan Stevens was jailed for four days in the Scott County Jail despite being innocent and no justification for arrest being provided on the charging document.

24. While housed at the Scott County Jail, Johnathan Stevens was subjected to cruel and unusual punishment (particularly the refusal of his inhaler which led to oxygen deprivation) and was harmed by the deliberate indifference to his serious medical needs.

25. Mr. Stevens, who has a disorder causing his lungs to be approximately half the regular size was denied access to his steroid inhaler which is prescribed to be used "prn" or "as needed." Mr. Stevens was only permitted to use his inhaler in the morning around 6:30 a.m. and at night around 9:00 p.m.

26. Mr. Stevens was also denied the use of an ointment prescribed to minimize scarring for his burnt face. As a result, Mr. Stevens face is now permanently scarred.

27. Mr. Stevens also suffers from seizures and states that the liberal use of his steroid inhaler can sometimes curtail an oncoming seizure—without access to his inhaler he blacked out a few times and could hardly get himself up to walk to the toilet. He described having no strength and at one time passing out and hitting his head while in the pod at the Scott County Jail.

28. Upon information and belief, Mr. Stevens weak and deteriorating condition was directly caused by the Defendants willful failure to provide Mr. Stevens with access to his prescription medication.

29. Mr. Stevens was visited by his Pastors who later told Mr. Stevens that he was in and out of consciousness, listless, and having difficulty staying awake during the visits.

30. Mr. Stevens can hardly recall these visits, which upon information and belief is due to the inadequate medical care received during the period of incarceration.

31. Mr. Stevens did not see a Medical Doctor at any time during the four days of wrongful incarceration despite his deteriorating condition.

32. Mr. Stevens was cursed out for "being difficult" asking for his inhaler and to have the vent opened to assist when he was struggling to breathe.

33. At one point, a Correctional Officer Rodney St. John pressed the button and tried to get Mr. Stevens inhaler, but Mr. Stevens was told that he can only get it from the nurse at 9:00 p.m. Mr. Stevens passed out shortly after this exchange and still did not get his inhaler except in the morning and around 9:00 p.m. despite his pleas for help.

34. Upon information and belief, Mr. Stevens wrongful arrest and the deliberate indifference to his medical needs caused medical setbacks including destabilization of his mental health condition, decreased lung capacity, and permanent scarring in addition to causing him to miss a long-awaited medical appointment wherein he would receive DNA testing to determine the best medication for treatment of his mental health conditions.

35. Mr. Stevens release was only secured when his criminal defense attorney, Public Defender Shonda Duncan, was approached by pastors of Mr. Stevens who had video

evidence from the church showing that Mr. Stevens was innocent of the crime in which he had been charged by Detective Wright.

36. No investigation was conducted prior to the wrongful arrest without probable cause and Mr. Stevens was arrested based solely on allegations made by [then] minor child Ms. White.

37. Mr. Stevens was unable to care for his disabled father during the period in which he was incarcerated in the Scott County Jail.

38. Because his wheelchair bound father was unable to adequately protect the home, Mr. Stevens home was burglarized during the period of incarceration—surround sound speakers, building and electrical supplies, and flooring were taken from his home.

39. Mr. Stevens was terminated from his employment by McDonalds in Oneida, Tennessee because of missing work due to the wrongful arrest.

40. Mr. Stevens found similar employment at another restaurant making $4 less per hour. He currently still earns $4 less hourly than he was earning prior to the wrongful arrest.

41. On or about March 12, 2025, the charges against Johnathan Stevens were dismissed.

42. Mr. Stevens suffered significant economic damages as a result of the wrongful arrest.

43. Mr. Stevens suffered due to intentional infliction of emotional distress or negligent infliction of emotional distress as a result of his wrongful arrest and the deliberate indifference to his medical needs.

44. All of this occurred despite no cause for arrest being indicated upon the face of the warrant.

## IV. CAUSES OF ACTION

A. Individual liability

45. Plaintiff hereby incorporates the preceding paragraphs of this complaint as if fully set forth herein.

46. Pursuant to 42 U.S.C. §1983, a person has a federal cause of action for money damages against an individual acting under color of state law who deprives another of rights, privileges, or immunities secured by the United States Constitution and federal laws. In this case, all of the individual defendants as well as John and Jane Doe defendants were acting under color of state law.

47. The Fourteenth Amendment to the United States Constitution requires that a pretrial detainee be provided adequate medical care while in the custody of any governmental entity.

48. The constitutional rights afforded to prisoners who have been duly convicted of any criminal offense under the Eight Amendment's Cruel and Unusual Punishment Clause extend to pre-trial detainees – who have not yet been punished as a result of a conviction – under the Due Process Clause of the Fourteenth Amendment. This Court should analyze a claim of deliberate indifference to the medical needs of a pre-trial detainee at least the same as an identical claim of a prisoner brought pursuant to the Eighth Amendment if not with additional constitutional requirements and protections as a pre-trial detainee has yet to be convicted of any offense and he is therefore possessed of all his constitutional rights not necessarily afforded to convicted persons, including his right to the presumption of innocence secured by the Fourteenth Amendment's Due Process Clause's liberty prong.

49. An individual officer engages in conduct in violation of the Due Process Clause of the Fourteenth Amendment where he or she demonstrates deliberate indifference to the

serious needs of a pre-trial detainee such as Johnathan Stevens by intentionally denying or delaying adequate medical care for said person. Deliberate indifference may be found to exist where an officer denies or delays obtaining treatment for a pre-trial detainee under facts and circumstances that would cause a layperson to conclude medical treatment was needed.

50. Upon information and belief, the individual defendants possessed actual knowledge that Johnathan Stevens was prescribed medications for his reduced breathing capacity as well as for mental health conditions and for the burn on his face.

51. Upon information and belief, the individual defendants possessed actual knowledge of the physical signs and symptoms being exhibited by Johnathan Stevens while he was wrongfully detained.

52. Johnathan Stevens complained to the individual defendants that he could not breathe and needed ventilation and possession of his inhaler but the individual defendants refused to provide him with the inhaler and several times refused to allow for his vent to be opened. It is difficult to calculate the loss of lung capacity and mental function that resulted from these denials while Mr. Stevens was struggling to breathe in his cell.

53. Upon information and belief, Johnathan Stevens had informed the defendants that their failure to provide him with his inhaler could lead to seizures that could otherwise be fended off with appropriate use of his steroid inhaler.

54. Upon information and belief, even when Johnathan Stevens began "blacking out," falling, and exhibiting signs of medical distress, the defendants failed to provide him any medical care whatsoever.

55. The defendants hereto and the John and Jane Doe defendants had actual knowledge that Johnathan Stevens was exhibiting physical manifestations consistent with a medical emergency and disregarded the risk to his health that they perceived.

56. Based on the foregoing, the defendants and certain John and Jane Doe defendants exhibited deliberate indifference to Johnathan Steven's serious need for adequate medical care which directly caused him injuries as described herein, and they are therefore liable to him pursuant to the provisions of 42 U.S.C. §1983.

57. Plaintiff therefore sues these defendants and the John and Jane Doe defendants for their deliberate indifference to and violation of Johnathan Stevens' right to be provided adequate medical care for a serious medical need. Plaintiff seeks the following relief:

    a. For medical expenses (past, present, and future);

    b. Lost wages;

    c. Loss of earning capacity;

    d. Pain and suffering, mental and emotional anguish, loss of enjoyment of life, permanent injury and disability;

    e. For any and all other damages allowable under state or federal law;

    f. Attorney's fees pursuant to 42 U.S.C. §1988;

    g. Costs of this action;

    h. Discretionary costs.

B. Municipal Liability of Scott County, Tennessee

58. Plaintiff hereby incorporates the preceding paragraphs of this complaint as if fully set forth herein.

59. The United States Constitution requires that a pretrial detainee be provided adequate medical care while in the custody of any governmental entity.

60. The constitutional rights afforded to prisoners who have been duly convicted of any criminal offense under the Eight Amendment's Cruel and Unusual Punishment Clause extend to pre-trial detainees – who have not yet been punished as a result of a conviction – under the Due Process Clause of the Fourteenth Amendment. This Court should analyze a claim of deliberate indifference to the medical needs of a pre-trial detainee at least the same as an identical claim of a prisoner brought pursuant to the Eighth Amendment if not with additional constitutional requirements and protections as a pre-trial detainee has yet to be convicted of any offense and he is therefore possessed of all his constitutional rights not necessarily afforded to convicted persons, including his right to the presumption of innocence secured by the Fourteenth Amendment's Due Process Clause's liberty prong.

61. A governmental entity may be held liable based upon its officers' deliberate indifference to and violation of any citizen's constitutional rights where a custom, policy, or procedure of the municipality is found to be the proximate cause of the constitutional violation.

62. Additionally, a governmental entity may be held liable where its supervisory officials and officers ratify an illegal action of lower-tier officers or employees or where the officials and officers at the executive level take actions that themselves constitute deliberate indifference and are the driving force behind the constitutional injury.

63. Upon information and belief, Scott County has a history of failing to provide adequate medical care to inmates and pretrial detainees housed at the Scott County Jail. This history creates a custom which caused the deliberate indifference constitutional violations

of the individual defendants and the John and Jane Doe defendants. But for this unconstitutional custom, the individual defendants and the John and Jane Doe defendants would not have exhibited deliberate indifference to Johnathan Stevens' serious need for adequate medical care but would have provided him necessary medications, including the use of his steroid inhaler and his mental health medications, and immediately sent Mr. Stevens to the hospital for evaluation upon recognizing that his condition had deteriorated to the point where he could barely stand, sit up, or walk.

64. Upon information and belief, Scott County through its policies and procedures has failed to adequately train and supervise its employees, officers and agents (medical personnel or otherwise) to provide detainees and inmates adequate medical care for serious medical needs. For example, it is hard to fathom how Johnathan Stevens was not provided use of his inhaler "as needed" or sent for evaluation when lay visitors with no medical training could observe that Mr. Stevens was in distress and failing to ambulate despite being in his early twenties and having no physical disability or trouble ambulating at intake.

65. But for these unconstitutional policies and procedures, the individual defendant and the John and Jane Doe defendants would not have exhibited deliberate indifference to Johnathan Stevens serious need for adequate medical care but would have instead: (1) permitted Mr. Stevens to use his steroid inhaler *as needed* consistent with the presciber's directives, (2) sought medical evaluation by a medical doctor upon recognizing that Mr. Stevens was exhibiting troubling symptoms including falling and struggling to walk, sit, and stand, and (3) sought medical evaluation by a medical doctor upon learning that Mr. Stevens had fallen and hit his head in the pod as a result of his deteriorating condition.

66. All of Plaintiff Johnathan Stevens' injuries and damages were proximately caused by the County's unconstitutional customs, policies, and procedures.

67. Based on the foregoing, Plaintiffs therefore sue Scott County for its customs, policies, and procedures which caused the individual defendants and the John and Jane Doe defendants to exhibit deliberate indifference to and to violate Johnathan Stevens' right to be provided adequate medical care for a serious medical need. Plaintiff seeks the following relief:

   a. For medical expenses (past, present, and future);

   b. Lost wages;

   c. Loss of earning capacity;

   d. Pain and suffering, mental and emotional anguish, loss of enjoyment of life, permanent injury and disability;

   e. For any and all other damages allowable under state or federal law;

   f. Attorney's fees pursuant to 42 U.S.C. §1988;

   g. Costs of this action;

   h. Discretionary costs.

C. Liability of Advanced Correctional Healthcare

68. Plaintiff hereby incorporates the preceding paragraphs of this complaint as if fully set forth herein.

69. For the purposes of Section 1983, ACH acted under color of state law in providing medical care to pre-trial detainees such as Johnathan Stevens.

70. Upon information and belief, ACH was the contracted medical provider for providing medical care to pre-trial detainees and inmates in the Scott County Jail at all times relevant hereto.

71. Upon information and belief, ACH has a history of failing to provide adequate medical care to inmates and pretrial detainees. These prior incidents create a custom which caused the deliberate indifference constitution violations of the Jane Doe nurse(s) tasked with providing care to pre-trial detainees and inmates at Scott County Jail during the relevant period. But for this unconstitutional custom, the agents of ACH would not have violated Plaintiff Stevens' constitutional rights but would have afforded him adequate medical care for his serious medical needs.

72. Upon information and belief, ACH through its policies and procedures, has failed to adequately train and supervise its employees, officers and agents (medical personnel or otherwise) to provide detainees and inmates with adequate medical care for serious medical needs. For example, and upon information and belief, but for ACH's improper policies and procedures, it is hard to fathom how Johnathan Stevens (1) was not provided use of his inhaler "as needed" or sent for evaluation when lay visitors with no medical training could observe that Mr. Stevens was in distress and failing to ambulate despite being in his early twenties and having no physical disability or trouble ambulating at intake. ACH's policies and procedures caused the deliberate indifference constitutional violations of Jane Doe Nurse(s). But for these unconstitutional policies and procedures, Jane Doe Nurse would not have exhibited deliberate indifference to Stevens' serious need for adequate medical care.

73. ACH's policies and procedures as noted herein caused the deliberate indifference constitutional violations of Jane Doe Nurse(s), who would not have exhibited deliberate indifference to Johnathan Stevens serious need for adequate medical care but would have instead: 1) permitted Mr. Stevens to use his steroid inhaler *as needed* consistent with the presciber's directives, (2) sought medical evaluation by a medical doctor upon recognizing that Mr. Stevens was exhibiting troubling symptoms including falling and struggling to walk, sit, and stand, and (3) sought medical evaluation by a medical doctor upon learning that Mr. Stevens had fallen and hit his head in the pod as a result of his deteriorating condition.

74. All of Plaintiff Johnathan Stevens' injuries and damages were proximately caused by the entity's unconstitutional customs, policies, and procedures.

75. Plaintiff therefore sues ACH and seeks the following relief:

   a. For medical expenses (past, present, and future);

   b. Lost wages;

   c. Loss of earning capacity;

   d. Pain and suffering, mental and emotional anguish, loss of enjoyment of life, permanent injury and disability;

   e. For any and all other damages allowable under state or federal law;

   f. Attorney's fees pursuant to 42 U.S.C. §1988;

   g. Costs of this action;

   h. Discretionary costs.

D. <u>42 USC §1983 Fourteenth Amendment Violation False Arrest and TCA§ 8-8-302(a)</u>

14

76. Plaintiff hereby incorporates the preceding paragraphs of this complaint as if fully set forth herein.

77. Under 42 U.S.C. §1983, a person has a federal cause of action for money damages against an induvial acting under color of state law who deprives another of rights, privileges, or immunities secured by the United States Constitution and federal laws. In this case, Detective Aimee Wright and Deputy Tony Jones were acting under color of state law. A state law claim for false arrest exists pursuant to Tenn. Code Ann. §8-8-302.

78. The Due Process Clause of the Fourteenth Amendment prohibits the individual defendants complained of herein from depriving individuals of liberty without legal justification. It requires that arrests follow established legal procedures and that arrests be supported by probable cause.

79. The arrest warrant taken by Detective Wright was invalid because none of the ten boxes providing justification for the arrest were checked.

80. As a direct and proximate result of the acts of the Defendants Aimee Wright and Tony Jones, Plaintiff suffered the following injuries and damages:

    a. Loss of his physical liberty and freedom;

    b. Loss of wages resulting from the Plaintiff's termination when he could not attend work due to his wrongful arrest;

    c. Deterioration of his physical and mental health due to inadequate medical care while Stevens was held in the Scott County Jail, which was a foreseeable result of the wrongful arrest; and

    d. Mental anguish and fear of death and/or permanent injury to his person as a result of being jailed without adequate medical care.

81. The Due Process Clause of the Fourteenth Amendment prohibits Defendant Scott County, Tennessee from having any custom, policy, or procedure which would constitute the proximate cause of its officers' deprivation of any citizen's constitutional rights. When such a custom, policy, or procedure has resulted in its officers' deprivation of a citizen's constitutional rights under Title 42 of the United States Code Section 1983, sovereign immunity is removed, thereby allowing the citizen to recover his damages in a suit against the municipality.

82. Upon information and belief, Scott County is liable to Plaintiff pursuant to 42 U.S.C. §1983 based on its history of prior incidences where its officers deprive individuals of their physical liberty and freedom without legal justification. Said history of similar incidences constitutes a custom thereby rendering the county liable.

83. The warrant for Stevens' arrest also did not contain any information establishing a substantial basis to believe that (a) the source of the information was credible or (b) that there was a factual basis for the information furnished by the minor declarant.

84. If the Detective had simply visited the church or phoned a church official, she could have easily discovered that there were cameras in the church which contained footage exonerating Stevens.

85. While Deputy Tony Jones statements to the Defendant show that he doubted the validity of the charges based upon his independent judgement, instead of asking questions or appealing to administrative staff, he effectuated the arrest of Stevens on March 6, 2025.

86. Plaintiff therefore sues Detective Wright and Deputy Jones and seeks the following relief:

a. For economic damages for lost wages, loss of earning capacity, and non-economic damages for pain and suffering, mental and emotional anguish, permanent impairment and disability, and loss of enjoyment of life; and

b. For any and all other damages allowable under state or federal law;

c. Attorney's fees pursuant to 42 U.S.C. §1988;

d. Costs of this action;

e. Discretionary costs.

87. Scott County is liable to the Plaintiff because its customs, policies, and procedures were the proximate cause of Detective Aimee Wright and Deputy Jones deliberate indifference to the Plaintiff's constitutional right to be free from wrongful arrest.

88. Plaintiff therefore sues Scott County and seeks the following relief:

a. For economic damages for lost wages, loss of earning capacity, and non-economic damages for pain and suffering, mental and emotional anguish, permanent impairment and disability, and loss of enjoyment of life; and

b. For any and all other damages allowable under state or federal law;

c. Attorney's fees pursuant to 42 U.S.C. §1988;

d. Costs of this action;

e. Discretionary costs.

E. Negligent Hiring, Training, and Retention

89. Plaintiff hereby incorporates the preceding paragraphs of this complaint as if fully set forth herein.

90. Both Scott County and Sheriff Brian Keeton are responsible for the hiring, training, and for decisions regarding employment and promotions within the Sherriff's Department.

91. Scott County and Sheriff Brian Keeton owe a duty to the general public and to the citizens of Scott County to exercise reasonable care in the hiring and promotion process. This is especially critical because of the powers inherently conferred upon officers.

92. Sheriff Brian Keeton has failed to perform adequate background checks, make adequate consideration of abilities, and has failed to vet hires during his tenure as Sheriff.

93. Upon information and belief, Defendants Scott County and Sheriff Brian Keeton failed to adequately train Detective Aimee Wright to (1) determine what constitutes "probable cause" for an arrest, (2) to conduct a thorough investigation prior to arrest, particularly for allegations such as those made against Stevens which occurred outside the officers presence, (3) take steps to prevent or negate confirmation bias, and (4) to at least speak with the accused and/or possible witnesses prior to swearing out a warrant for the arrest.

94. Detective Wright was promoted into her Detective slot a mere three months after graduating the police academy (See: Exhibit B). She was selected for the position despite many other employees and applicants having more experience, training, and seniority.

95. Sheriff Brian Keeton either knew or should have known that a candidate three-months out of the police academy with no road or investigative experience was unfit for duty in a Detective role, however he promoted Aimee Wright to the position of Child Sex Crime Investigator, tasking her with the important role of investigating crimes that affect the most vulnerable of all victims in the criminal justice system.

96. Scott County has a history of negligent hiring and retention with regard to Detectives, and Keeton ironically pointed the same out in a post congratulating the inexperienced officer on her promotion to the role of Detective. (See: Exhibit C).

97. It is unclear why Sheriff Brian Keeton opted to promote a newly hired school resource officer with no road experience and no training into the role of Detective, however upon information and belief the Scott County Sheriff's Department has a culture of preferring employees who will do what they are told without exercising independent judgement.

98. Upon information and belief, Keeton did not reconsider the appointment of Wright even when Detective Wright was allegedly investigated herself by the Department of Children's Services shortly after being placed in the role.

99. Similarly, another recently hired female officer with no prior law enforcement experience has, upon information and belief, been promised a Detective slot after she completes the police academy and successfully completes one year of employment post-academy.

100. Upon information and belief, no employees have been required to perform pre-employment drug screens under the current Sherriff's administration despite Scott County having staggering substance abuse issues.

101. The evidence suggests that hiring decisions within the Department have been made recklessly and without consideration of merit, skill, experience, background, or seniority.

102. Additional recent instances of negligent hiring and retention include:

   a. The re-hiring and promotion of a deputy to drug agent after Sherriff Brian Keeton had upon information and belief, formerly allowed to resign from Caryville after he failed a psychological examination while Keeton was the Chief of Police there.

   b. The hiring of a deputy who had failed to qualify with his firearm at another department—said deputy was provided a service weapon and was placed in service as a road deputy answering calls. The lack of firearm qualification only

came to light after the previous department took the deputy before the POST commission in August 2025 for potential decertification on other grounds.

    c. The re-hiring of a deputy to a deputy sheriff role despite a prior theft from a local Dollar General. The deputy was terminated after he was impeached on the stand for the theft by a local attorney in a preliminary hearing but upon information and belief, may have been rehired by the department again after this occurrence.

    d. Additionally, upon information and belief, Keeton has failed to provide training for Court Officers as required by Tenn. Code Ann. § 5-7-108(2). Instead placing new hires in the role and rotating them out of the role at or before twelve months which circumvents the spirit of the law requiring training and/or certification of Court Officers.

103.    The foregoing examples show that the hiring and promotion practices are not merely negligent, but instead are the result a complete and utter reckless disregard for the safety and liberty of citizens of Scott County.

104.    Based upon the foregoing, it is believed that the hiring and employment practices of Sheriff Brian Keeton and Scott County Sherriff's Department constitute gross negligence and therefore would not be excluded by the TGTLA.

105.    Defendant Sheriff Brian Keeton owes the public and Plaintiff Johnathan Stevens a duty to hire safe officers.

106.    Defendant Keeton breached this duty by promoting Detective Wright to Detective despite knowing that she had little to no experience with investigations.

107.    It was foreseeable due to Detective Wright's lack of training and experience that this type of harm (wrongful arrest) would occur.

108.     Defendant Keeton's breach of the duty to hire and promote safe and capable officers directly caused the harm suffered by Johnathan Stevens.

109.     Johnathan Stevens was harmed by the breach of this duty and has suffered damages including lost wages, loss of earning capacity, non-economic damages for pain and suffering, mental and emotional anguish, and loss of enjoyment of life.

110.     Plaintiff therefore sues Scott County and Brian Keeton and seeks the following relief:

    a.  For economic damages for lost wages, loss of earning capacity, and non-economic damages for pain and suffering, mental and emotional anguish, permanent impairments and disability, and loss of enjoyment of life; and

    b.  For any and all other damages allowable under state or federal law; and

    c.  Costs of this action; and

    d.  Discretionary costs.

F.  Tenn Code Ann. §29-20-202 et. seq. (TGTLA – Negligence)

111.     Plaintiff hereby incorporates the preceding paragraphs of this complaint as if fully set forth herein.

112.     Scott County was at all times hereto responsible for the operation and supervision of the Scott County Jail and its employees and third party medical providers.

113.     Pursuant to the Tennessee Governmental Tort Liability Act, Scott County and individual defendants hereto owed Johnathan Stevens a duty to provide adequate medical care while he was detained and to not wrongfully deprive him of his liberty and freedom.

114.     These Defendants breached these duties of care as set forth herein and are therefore liable to the Plaintiff pursuant to the TGTLA.

115.     Defendants Scott County and Jane Doe Nurse(s) are negligent per se for violating Tennessee Code Annotated §41-2-109(5).

116.     Defendant Detective Aimee Wright is grossly negligent for recklessly failing to adequately investigate the complaint made against Stevens and for electing to arrest rather than summons Stevens into court upon the simple and false allegation by a child that Stevens' committed a B misdemeanor.

117.     Upon information and belief, Defendants are also negligent per se for not complying with various provisions of state-established minimum standards concerning medical care of inmates.

118.     The Defendants' breaches of the duties noted herein proximately caused Plaintiff's injuries and damages.

## V.     PRAYER FOR RELIEF

WHEREFORE, premises considered, Plaintiff respectfully requests this Honorable Court grant relief as follows:

     a.  Issue process, requiring the Defendants to answer this Complaint.

     b.  Empanel a jury of twelve to try this cause.

     c.  Award compensatory damages against all Defendants pursuant to the claims brought pursuant to 42 U.S.C. §1983 in the amount of $2,500,000.00.

     d.  Award compensatory damages against all Defendants in the maximum amount allowable under the Tennessee Governmental Tort Liability Act.

     e.  Award Plaintiff's attorney's fee pursuant to 42 U.S.C. §1988.

     f.  Award costs of this action including discretionary costs.

     g.  Award any other or further relief to which the Plaintiff may be entitled.

Respectfully submitted this 5th day of March 2026.

JP LAW LLC:

/s/ Jade A. Peters, Esq.
Jade A. Peters, (BPR 039606).
19391 Alberta St.,
Oneida, TN 37841
(888) 448-5233 (phone)
(888) 448-0529 (fax)
JADE@JPLAW.PRO

## COST BOND

I, Johnathan Stevens, principal, and Jade A. Peters, Esq. as surety, are held and firmly bound to the United States District Court, Eastern District of Tennessee, for the payment of all costs awarded against the principal in the cause pursuant to TCA Section 20-12-120, et. seq., To that end, we bind ourselves, our heirs, executors, and administrators.

Johnathan Stevens

Jade A. Peters



## ORDER GRANTING BAIL FOR DOMESTIC ABUSE CASES

Case # 2025-CR-157
Warrant # 65706
State Control # _____

STATE OF TENNESSEE
VS.

Pursuant-to Tennessee Code Annotated, Section 40-11-150, as amended, the Magistrate/Court has reviewed the facts of the arrest and detention of the defendant and has determined that the defendant:

☐ Is a threat to the alleged victim or other family or household member;

☐ Is a threat to the public safety; and/or

☐ Is not likely to appear in Court.

Pursuant to the above findings, the Defendant's release or bail is condition on the following:

IT IS ORDERED AS FOLLOWS:

☐ The defendant is enjoined from and shall not assault or attempt to assault or threaten to commit any other criminal.

   offenses against the alleged victim or other family or household members.

☐ The defendant is prohibited from harassing, annoying, telephoning, contacting or otherwise communicating with

   alleged victim, either directly or indirectly.

☐ The defendant is directed to vacate or stay away from the home of the alleged victim and to say away from any other location where the victim is likely to be.

☐ The defendant is prohibited from using or possessing a firearm or other deadly weapon.

☐ The defendant is prohibited from possessing a firearm or other deadly weapon.

☐ The following order required to protect the safety of the alleged victim and to ensure the appearance of the defendant in Court: _____

BOND TO BE SET AT: _____

Please take notice that the defendant may request a hearing before the Court having jurisdiction over the offense for which the defendant was arrested or is charged to review the conditions.

IT IS FURTHER ORDERED that a copy of this order be given to the Defendant and the Sheriff, the signed shall be filed with the clerk

ENTERED THIS THE _____ DAY OF _____, 20 ____

_____
Judge/Clerk/Magistrate

**STEVENS, JOHNATHAN DAILY**
CHARGE(s)
**1. 39-13-101-ASSAULT**

Initial Appearance Date: 3/10/25    _ROR_

CONTINUANCE/OTHER COURT ACTION

3/12/25  9:00  Discuss

_____
_____
_____
_____
_____
_____
_____

_P.D._    COUNSEL
_____

☐ Retained    ☑ Appointed Date: _____

FAILTURE TO APPEAR

☐  Defendant, having failed to appear in Court, a conditional forfeiture of defendant's bail and a capias for his arrest is here ordered. Bail is set at $ _____

☐  Defendant having failed to appear on the date set for trial, a forfeiture of his cash bond is here ordered.

Judge: _____ Date: _____

# IN THE GENERAL SESSIONS COURT OF SCOTT COUNTY, TENNESSEE

**STATE OF TENNESSEE vs. STEVENS, JOHNATHAN DAILY**

Case # 2005-CR-151
Warrant # **65706**
State Control # _____

ADDRESS: **320 SIMPSON RD**

| | | |
|---|---|---|
| DOB **12/29/2003** | EYES **BROWN** | SSN **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** |
| TDL# | Phone # | Employment: |
| Vehicle: Yr. _____ | Make/Model: _____ | VIN: _____ |
| Lic. # | State: | Location of Arrest: _____ |
| Co-Defendants _____ | | |

## ARREST WARRANT/CRIMINAL SUMMONS

ORIGINAL

### TO ANY LAWFUL OFFICER OF THE STATE:

Based on this affidavit of complaint made and sworn before me and attached hereto, there is probable cause to believe that the offense(s) listed below has/have been committed in Scott County, Tennessee, by the defendant ; you are therefore commanded in the name of the State of Tennessee forthwith to ☐ **(summon)** ☒ **(arrest and bring)** the said accused person before the General Sessions Court of Scott County, Tennessee, to answer the following charge(s):

**1. 39-13-101-ASSAULT**

Bail: $ _____

☐ Special Domestic Violence Bail
Conditions on Back of Warrant

Date: 3-6-25

☐ Other Special Bail Conditions as follows: _____

_Colly Smith_
**JUDGE/CLERK/COMMISSIONER**

☐ The Magistrate finds that it is necessary to issue an arrest warrant instead of a summons based on the affidavit of a non-law enforcement officer in order to prevent an immediate threat of harm to a victim as defined in Tennessee Code Annotated §36-3-601(8)

## OFFICER'S RETURN

### ARREST

Executed as commanded by the arrest of the defendant for the following indicted reasons:

☐ Nature of Offense (Felony, DUI, Bad Check, Driving on Revoked License, Prostitution) or Command of Magistrate
☐ Defendant's safety/medical care

☐ Likelihood of offense indicated reasons:
☐ Likelihood of personal/property injury
☐ Dangerously intoxicated.
☐ Unsatisfactory evidence of identity

☐ Prosecution jeopardized.
☐ Likelihood of failure to appear.
☐ Refusal to sign citation.
☐ Outstanding arrest warrant(s)

☐ Scott Co. Sheriff's Dept.
☐ Oneida Police Dept.
☐ Other

☐ THP
☐ Winfield Police Dept.

**OFFICER:** Dep Tony Jones

**Date:** 3-6-25    **Time:** _____

### SUMMONS

NOTICE: FAILURE TO APPEAR BEFORE THE GENERAL SESSIONS COURT IN HUNTSVILLE ON THE DATE AND TIME BELOW WILL RESULT IN YOUR ARREST FOR A SEPARATE CRIMINAL OFFENSE WHICH IS A CLASS A MIDEMEANOR AND PUNISHABLE BY A JAIL SENTENCE OF UP TO 11 MONTHS/29 DAY AND/OR A $2500 FINE

**TIME:** _____ (a.m.) (p.m.) **DATE:** _____

**CERTIFICATE OF SERVICE:** The undersigned officer hereby verifies that on the date shown he **summoned** the defendant to appear in the above court on the date and time shown by giving the defendant a duplicate of this citation.

**OFFICER:** _____ **DATE:** _____

**ACCEPTANCE OF SERVICE:** By signing below, I hereby agree to appear on the above Court on the date and time shown to answer the charges herein. I understand that my signature and acceptance of service is not an admission of guilt. I understand that if I fail to appear that I will be subject to the criminal penalties set forth in the Notice above.

**DEFENDANT:** _____

# IN THE GENERAL SESSIONS COURT OF SCOTT COUNTY, TENNESSEE

STATE OF TENNESSEE
VS.
**STEVENS, JOHNATHAN DAILY**

CASE # 2025-CR-157
WARRANT # <u>65706</u>
STATE CONTROL #_____

## AFFIDAVIT OF COMPLAINT

I, affiant named below, after being duly sworn according to law, state that the defendant, whose identity is set forth to the best of my knowledge on the attached arrest warrant/summons, committed the offense(s) listed below in Scott County on or about the dates shown and that the essential facts constituting the offense(s), the source(s) of my information, and the basis for the reliability of the information are as follows:

Charge(s)

| | Tennessee Code Annotated | Date of Offense |
|---|---|---|
| **1. ASSAULT** | **39-13-101** | **02/02/2025** |

| Basis for Charge(s) | WITNESS/PHYSICAL EVIDENCE SEIZED |
|---|---|
| ON 02/02/2025 ADDYSON WHITE (VICTIM) WAS AT HELENWOOD BAPTIST CHURCH, WHILE SHE WAS WALKING OUT OF THE CHURCH JONATHAN STEVENS WAS TRYING TO TALK TO HER AND MS. WHITE WALKED PAST HIM TRYING TO IGNORE HIM. MR. STEVENS THEN AGGRESSIVELY GRABBED HER BY THE LEFT ARM TO MAKE MS. WHITE TALK TO HIM. BY GRABBING MS. WHITE, MR. STEVENS INTENTIONALLY CAUSED EXTREMELY OFFENSIVE PHYSICAL CONTACT WITH HER. MS. WHITE ALSO STATED THAT SHE WAS SCARED THAT IF SHE SAID ANYTHING ABOUT THE INCIDENT THAT MR. STEVENS WOULD RETALIATE. THIS INCIDENT OCCURRED IN SCOTT COUNTY, TN. | VERBAL STATEMENT FROM VICTIM |
| | ☐ Affidavit cont. on Page _____ attached hereto |

## Acknowledgement of Oath/Probable Cause Determination

Affiant's Signature

Name (printed)

Address: <u>575 SCOTT HIGH DRIVE</u>
<u>HUNTSVILLE, TN 37756</u>

Phone # <u>(423) 663-3111</u>

Date: 3/6/2025

Based on this affidavit of complaint made and sworn before me on the date shown and acknowledged by the affiant's signature, there is probable cause to believe that the offense(s) listed above have/has been committed in Scott County, Tennessee, by the defendant; all law enforcement officer are therefore commanded in the name of the State of Tennessee forthwith to

☐ **(summon)** ☑ **(arrest and bring)** the said accused person before the General Sessions Court of Scott County, Tennessee, to answer the charge(s) unless the defendant has already been cited or arrested without warrant.

_____
Judge/Clerk/Judicial Commissioner

3-6-25
Date

# JUDGMENT

As indicated herein, after a trial on the merits or upon acceptance of the defendant's plea of guilty pursuant to Rule 11 after the defendant was advised in open Court of his constitutional and statutory rights and the consequences of the conviction(s) all of which the Court

finds he understand and freely, voluntarily and knowingly waived including the right to counsel, if appearing pro se. the Court finds that the defendant is guilty of the following misdemeanor(s); and after considering the evidence, the entire record and all factors required by Tennessee Code Ann. Title 40, Chapter 35, the indicated sentences are imposed:

Offense (Class)      Fine      Confinement*      Unsupended

*(@ 75% _____ minimum service eligibility)
☐ Sentences to be served (consecutively to)
    (concurrently with) _____

☐ Judgement deferred for _____ pursuant
    Tenn. Code Ann. Section 40-35-313 subject to go
    odd behavior and compliance with indicated conditions
    of probation.
☐ Community Service _____ hours.
☐ Revocation of Driver's License _____ years.
☐ Forfeitures: _____

☐ Payment of restitution _____

☐ Payment of court costs, including $ _____
    probation fee and above amounts, totaling $ _____
    Which is to be paid _____
☐ Indigent & relieved of all obligations.
☐ Unsuspended confinement is to be served _____

☐ Period of Probation _____
☐ (Probation) (Sentencing) (Compliance reviews)
    hearing set for _____
☐ Following charges dismissed: _____

☐ _____
☐ _____
    _____

Date: _____      Judge: _____

## NOTIFICATION OF POSSIBLE EXPUNCTION OF CRIMINAL RECORDS

**If the defendant's charge is dismissed; a no true bill is returned by the grand jury; the defendant is arrested and released without being charged with an offense; or the court enters a nolle prosequi in the defendant's case, the defendant is entitled, upon petition by the defendant to the court having jurisdiction over the action and pursuant to T.C.A 40-32-101, to the removal and destruction of all public records relating to the case without cost to the defendant.**

---

State Control # _____  Case # _____

STATE OF TENNESSEE

VS.

**STEVENS, JOHNATHAN DAILY**

## ORDER

It is the ORDER of the Court that:
☑ Following charges are dismissed for the reasons indicated: *lack of PC issues w/ credibility of witness*

☐ Failure to prosecute; costs taxed to _____
☐ Insufficient evidence upon final disposition.
☐ Lack of probable cause upon preliminary hearing.
☑ Motion of State.
☐ Upon SUCCESSFUL completion of diversion period.
☐ Defendant is bound over and held to Grand Jury. Bail set at
    $ _____
Judge _Scarlet W. Ett_  Date: _3.12.25_

## COUNSEL

☐ Retain   ☐ Appointed date: _____
WAIVER OF COUNSEL Understanding that he/she is
Charged with an offense which involves a possible deprivation of liberty, and his/her
rights to counsel as set forth above, the defendant voluntarily, knowingly, and without
force or
coercion or promises of any kind, waives the right to counsel. He/she acknowledges
that he/she has been, given sufficient opportunity to retain counsel and that he/she
does not wish to
request court appointed counsel and wishes to proceed in this case without an
attorney.
Acknowledgement:
Date:

## WAIVER OF PRELIMINARY HEARING If the defendant expressly waives
his right to a preliminary hearing understanding that he will remain on bail or in jail
consideration of his case by the next term of the Grand Jury.
Date: _____
Defendant: _____
Defense Counsel: _____
Asst. DAG: _____

## WAIVER FOR TRIAL ON THE MERITS/NOT GUILTY

PLEA The defendant, after being fully advised by the Court of his right to be tried
only upon indictment or presentment by the Grand Jury, his right to be preliminary
hearing before indictment and his right to a trial by jury. Hereby waives those rights
and requests that the Judge hear his case on the merits and set an appropriate sentence
including any permissible fine if found guilty. The state joins in this request for the
purpose of waiving its right to a jury trial. The defendant please not guilty
Date _____

Defendant _____
Defense Counsel _____
Asst. DAG _____

---

## WAIVER OF INDICTMENT BY GRAND JURY AND TRIAL BY JURY AND REQUEST FOR ACCEPTANCE OF PLEA OF GUILTY

The defendant hereby requests to enter a plea of guilty to the misdemeanor offense(s)
shown on the Judgement and waives his/her rights to indictment by a grand jury and
trial by jury and requests the Court to accept his/her plea and set an appropriate
sentence including any fine. The defendant understands the nature of the charge and
against his/her and that the minimum mandatory and maximum sentences for the
offenses to which he/she is plead guilty are shown on the chart below. The defendant
certifies that the personal statistical information on the Judgement is correct. The
State joins in this request for the purpose of waiving its rights to a jury trial.

### RIGHT TO COUNSEL
The defendant understands that he/she has the right to have the assistance
of counsel at all stages of the proceedings and that if he/she is indigent and
cannot afford one, the Court would appoint an attorney to represent him/her. He/she
understands that one of the advantages of being represented by an attorney is the
effective preservation of the right to appeal.

### TRIAL RIGHTS
The defendant acknowledges that he/she fully understands the following
constitutional and statutory rights and that by pleading guilty he/she freely
and voluntarily gives up. waives, each and every one of these rights:
(1) The right to plead not guilty; (2) The right to a preliminary hearing;
(3) The right to indictment by the Grand Jury; (4) The right to a jury trial;
(5) The right to confront and cross-examine witnesses; (6) The right not to be
compelled to incriminate himself/herself, (7) The right to use the power of the Court
to obtain evidence and witnesses in his/her favor and testify in his/her
own behalf, (8) The right to have any fine greater than $50.00 be set by a
jury: and (9) The right to appeal if convicted after trial. The defendant
understands that upon pleading guilty, the Court may ask him/her questions
about the offenses and that the answers if under oath, on the record and in presence
of counsel, may be used against him/her in a prosecution for perjury
or false statement.

### CONSEQUENCES OF GUILTY PLEA
The defendant understands that there will be the following consequences it
he/she pleads guilty and his/her plea is accepted by the Court: (1) There will
be no further trial except as to his/her sentence: (2) His/her prior convictions,
if any, may be considered in determining the sentence: (3) The conviction
in this case will be become part of his/her public record: and (4) The conviction in this case may
result in the defendant receiving greater punishment if he/she is later convicted
of another crime, and may require, as in the case of DUI or drug offenses. a greater
minimum mandatory sentence. The defendant fully  understanding
his/her rights and the consequences of his/her plea of guilty and the resulting
conviction, states that he/she is pleading guilty because he/she is guilty and
committed the offenses to which he/she is pleading guilty and that his/her
plea of guilty is freely and voluntarily made and is not the result of force
or threats or promises apart from the plea agreement. SENTENCING
RECOMMENDATIONS

☐ The defendant understands that the District Attorney General or his representative
will recommend the sentence and other action set out in the Judgement upon his/her
Plea of guilty and the defendant requests that the Court impose that sentence: under
the conditions set forth.

☐ The defendant is entering his/her guilty plea without any plea argument.
Date _____
Defendant _____
Asst. DAG _____

### TABLE OF PUNISHMENTS

| MAXIMUM PUNISHMENTS | | | MINIMUM FINE | |
|---|---|---|---|---|
| CLASS | JAIL SENTENCE | FINE | MARAIJUANA OFFENSES | |
| A | 11 Mo./29 days | $2500 | 1st Offense | $250 |
| B | 6 Months | $500 | 2nd Offense | $500 |
| C | 30 days | $50 | 3rd Offense | $7500 |

MINIMUM PUNISHMENTS FOR DUI

| CONVICTION | JAIL SENTENCE | FINE | REV. OF LICENSE |
|---|---|---|---|
| 1ST | 2 DAYS* | $350 - $1500 | 1 Year   *7 day is |
| 2ND | 45 DAYS | 600-3500 | **defendant's blood** |
| 3RD | 120 DAYS | 1,100- 10,000 | alcohol is 20% |
| 4th (class E Fel) | 150 DAYS | 3,000 - 15,000 | or more. |

We are so excited to introduce you to the newest member of the Child Protection Investigation Team! Mrs. Aimee Wright started her career with the Scott County Sheriff's Office in July 2021. She was promoted from the correctional facility to the road department, then went on to the police academy in April 2022. After her graduation of the police academy in June 2022, Aimee began working at Scott High School as the SRO. In September of 2022, Sheriff Keeton promoted Mrs. Wright to Detective Wright as the child abuse investigator for Scott County.

Since take the roll, Detective Wright has already completed a week of child abuse specific training at the Connecting for Children's Justice Conference. While you can find her at the Sheriff's office, Detective Wright will also have a co-location office at The Children's Center so that she can meet with children and families.

"I became the SCSO child abuse investigator because I want to make a difference in our county, and be a voice and an advocate for children who don't have a voice or haven't found theirs yet. I want all children and families in Scott county to know that I care about them and will do my due diligence to make sure they are safe. I pledge to make sure that anyone who harms children in Scott county will be investigated and punished to the full extent of the law. I am honored that the child investigator role has been bestowed upon me to be able to serve the children and families of Scott county." -Detective Aimee Wright



Good Afternoon Scott County friends. I hope and pray this time finds you well and blessed. I wanted to take a few minutes to tell you about something I am grateful and thankful for and consider a proud accomplishment with the recent elevation of Aimee Wright as our new Crimes Against Children Investigator. When I was running for this office I had several of you reach out to me: citizens, child advocacy groups, child abuse awareness workers and government agencies that were concerned that abused and neglected children were not being served properly by their local law enforcement agency and investigators. I knew this was a huge concern to you and it became one of my top priorities. As a dad, husband, son, brother and christian serving in law enforcement, I always felt it was not only my responsibility as a decent human being, but my highest duty to help protect children in these horrendous and unspeakable situations. Now, 90 days into being your Sheriff, and having the time to organize, research and put things in place to better serve you and your family, what I found was disturbing. In fact, you were correct. There was a lack attention, care and concern for reported cases of crime that involved the abuse and neglect of children. I have been angry, concerned and nearly sick to my stomach to think and see these types of criminal investigations fall by the wayside. Now, we are on firmer ground I am hopeful that we have put the right people in place, like Investigator Aimee Wright, who has the drive, passion and personal responsibility to pick up these horrific cases where they were left and untouched, and in hopeful prayer, bring a case conclusion by serving these child victims as our first and foremost priority. I am further reaching out to you to say thank you for your support and steady friendships during these last 90 days. Our hearts are in the right place, our people are in the right place and I feel strongly that the children of Scott County who may face these life altering horrors are in the right hands at the right time. I appreciate you.

